UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DEANN NELSON, Ed.D.,                                        05-CV-0407E(F)

               Plaintiff,

      -vs-

BOARD OF EDUCATION OF THE JAMESTOWN                         MEMORANDUM
   CITY SCHOOL DISTRICT and
RAYMOND FASHANO, as Superintendent of the                          and
   Jamestown City School District,
                                                            ORDER[1]
            Defendants.

---

## INTRODUCTION

      Plaintiff Dr. Deann Nelson ("Nelson"), a member of the City of Jamestown

Board of Education ("Board"), has filed this action against the Board and

Raymond Fashano ("Fashano"), the Superintendent of the Jamestown City School

District (together "defendants"), seeking declaratory and injunctive relief.  Nelson

initially commenced this action in New York State Supreme Court, Chautauqua

County, and defendants removed it to this Court on June 10, 2005, pursuant to the

Court's federal question and supplemental jurisdiction under 28 U.S.C. §§1331 and

1367.  Currently pending before the Court is the defendants' motion to dismiss the

Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

("FRCvP").

---

      [1]This decision may be cited in whole or in any part.

## BACKGROUND

In order to comply with the provisions of the Individuals with Disabilities in Education Act ("the IDEA"), 20 U.S.C. §1400 *et seq*., states must, among other things, ensure that an individualized education program ("IEP") is developed, reviewed and revised for each child with a disability.  20 U.S.C. §1412(a)(4).  The IDEA sets forth specific requirements for the content of each IEP.  20 U.S.C. §1414(d)(A).  Nelson alleges that, in the City of Jamestown, the development of such IEPs is charged to a Committee on Special Education and a Committee on Preschool Special Education ("the Committees"), the composition of which is regulated by the IDEA, New York State Education Law and the regulations promulgated by the New York State Secretary of Education.  Compl. ¶11; N.Y. Educ. Law §4402; 8 NYCRR §200.4(d).  Once the Committee has prepared the IEP, a summary — called a "board action sheet" — is prepared and forwarded to the Board for its consideration and approval or disapproval of the IEP.  Compl. ¶ 12.

## FACTS

The Court assumes true the following facts alleged in the Complaint. Nelson was elected to the Board in July 2003 for a one-year term.  After her election to the Board, Nelson began to raise concerns regarding the sufficiency of the information provided by the Committees in order to assess the propriety of the IEPs, and she expressed the desire to read the actual IEPs.  Compl. ¶18. Nelson was allowed to read the IEPs but only in the district's administrative offices.

Compl. ¶19.  In 2004, Nelson ran for re-election for a full three-year term.  During

her campaign, Nelson promised that if elected to the Board, she would "engage

in meaningful review of IEPs for every child submitted for board approval."

Compl. ¶16.  After Nelson's re-election in May 2004 she continued to voice her

concerns  regarding what she considered to be "irregularities and systemic

problems" with IEPs to her fellow Board members, Fashano and other district

personnel.  Compl. ¶22.

On September 14, 2004, over Nelson's lone objection, the Board passed a

Resolution ("the Resolution") impacting Nelson's ability to read the IEPs.  The

Resolution states:

> "WHEREAS, the Board has considered the various factors
> relating to its role in determining and furnishing suitable educational
> opportunities for children with disabilities in light of the decision of
> the State Review Officer in Appeal No. 04-016.
> "NOW, THEREFORE, IT IS RESOLVED, that the Board shall
> rely on the content of the written recommendations of the Committee
> on Special Education and the Preschool Committee on Special
> Education when determining what services are to be furnished to
> individual students; and it is
> "RESOLVED, that no board member is authorized to act on
> behalf of the Board to read and review individual Individualized
> Education Programs (IEPs) of District students."

September 14, 2004 Resolution of the Board of Education of the Jamestown City

School District.[2]  Thereafter, on January 7, 2005 Nelson was advised that,

pursuant to the Resolution, she would no longer be allowed to read IEPs at the

---

[2] Annexed to the Complaint as Exhibit B.

District's administration building.[3]  Furthermore, the Board rejected motions by Nelson on two occasions — March 22, 2005 and May 10, 2005 — to adjourn their public Board of Education meetings to executive sessions in order to allow Nelson an opportunity to read the IEPs being submitted for the Board's consideration on those dates.  Following the aforementioned events, Nelson filed this action.

Nelson's Complaint asserts two causes of action.  Her first cause of action seeks declaratory relief stating that in order to adequately perform the duties required of Boards of Education under the New York State Secretary of Education's regulations, Board members must be allowed to read IEPs and therefore the Resolution is null and void.  In her second cause of action, Nelson seeks declaratory and injunctive relief on the basis that the defendants' retaliation against her — specifically, the Board's passage of the Resolution, Fashano's enforcement of the Resolution by preventing her from reading IEPs at the district offices and the Board's refusal to adjourn meetings to executive session in order to allow her to read IEPs — violates her First Amendment right of free speech.

On June 10, 2005 defendants removed the action to this Court and on June 13, 2005 filed the instant FRCvP 12(b)(6) motion to dismiss.  After receiving the

---

[3] Nelson alleges that "[o]n or about January 7, 2005, [she] was advised by the [district's] Director of Pupil Personnel, Sheryl Johnson, who, upon information and belief, was following the directions of defendant Fashano, that plaintiff would no longer be allowed to come to the district's administration building to read IEPs $_{***}$ because of the $_{***}$ Resolution."  Compl. ¶23(b).

submissions of the parties and hearing oral argument, the motion was submitted on July 29, 2005.

## **DISCUSSION**

When considering a FRCvP 12(b)(6) motion, the Court "must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Phelps* v. *Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002). The motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). Accordingly, the Court is not concerned with whether the plaintiff may ultimately succeed on her claims but must "assess the legal feasibility of the complaint." *Cooper* v. *Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

Defendants argue that Nelson's Complaint must be dismissed because (1) this action, insofar as it challenges the legality of the Resolution, should have been brought as an Article 78 proceeding and, because there is a four-month statute of limitation for such proceedings, Nelson's claim is time-barred, (2) Nelson's claim pursuant to 42 U.S.C. §1983 alleging retaliation for the exercise of her First Amendment free speech rights fails as a matter of law because Nelson is a policymaker whose speech is not entitled to First Amendment protection and (3) as to defendant Fashano, because Nelson has failed to adequately allege Fashano's personal involvement in any of the Board's actions and, in the

alternative, because Fashano is entitled to qualified immunity.  The Court will examine Nelson's causes of action in reverse order.

A.  Free Speech Claim

In order to state a claim under 42 U.S.C. §1983, a plaintiff must allege that she was deprived of a federal right by a person or persons acting under color of state law.  *See Gomez* v. *Toledo*, 446 U.S. 635, 640 (1980).  There is no dispute that defendants are state actors.  Therefore, the only issue presented is whether the acts Nelson has alleged, if true, violate her First Amendment right of free speech.

Nelson alleges that in her capacity as Board member she engaged in protected speech — specifically, public statements criticizing the systemic problems and irregularities she perceived with the IEPs and her public campaign promises to read every IEP and to work for greater Board accountability for educational programs.  She contends that in retaliation for that speech, the Board passed the Resolution preventing her from reading IEPs, Fashano enforced the Resolution by preventing her from reading IEPs at the district administrative office, and the Board, on two occasions, rejected her motion to adjourn its Board meetings to executive sessions so that she could read IEPs.  Nelson alleges that these acts "severely obstructed, and continue to obstruct" her from performing her duties as a Board member such that "the residents of the Jamestown City School District who re-elected her in May 2004 are effectively denied

representation on the [Board] $_{***}$," (Compl. ¶35) and thus violate Nelson's First Amendment free speech rights.

Defendants argue that the claim should be dismissed because, as Nelson is a policymaker, even if the Board's actions were retaliatory, she is not protected from retaliation based on her political speech.  In support, they cite *Camacho* v. *Brandon*, 317 F.3d 153 (2d Cir. 2003), in which the Second Circuit Court of Appeals held that a policymaking staff member did not have a First Amendment retaliation claim when he was terminated, not for his own speech, but in retaliation for the political positions and allegiances of his boss.  In so holding, the Second Circuit recognized that because plaintiff's boss, as an elected city council member, was a "quintessential policymaker" and was not entitled to First Amendment protection for his political speech, plaintiff also lacked protection from retaliation based on that speech.

In opposition, Nelson argues that *Camacho* is inapplicable and that the recent Second Circuit Court of Appeals case of *Velez* v. *Levy*, 401 F.3d 75 (2d Cir. 2005), which recognized a school board member's claim for First Amendment retaliation, governs this case.  In *Velez* v. *Levy*, the Second Circuit considered the First Amendment retaliation claim of a New York City community school board member.  Velez alleged that, in retaliation for the positions she took as a board

member, opposing board members fabricated charges[4] against her and the Chancellor of the New York City School District, relying on these fabricated charges and a blatantly shoddy investigation into the same, removed her from her elected position on the school board.  The Second Circuit analyzed Velez's claim, not under the framework for public employee retaliation cases, but rather as a more fundamental First Amendment retaliation claim. *Velez*, at 97.  The Second Circuit stated that "a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the First Amendment." *Ibid.*

After considering Velez's allegations, the Second Circuit held that "the First Amendment bars state officials from *stripping* elected representatives of their office based on the political views of such representatives." *Id.* at 98 (emphasis added).  In so holding, the Second Circuit noted:

> "We cannot permit a state official to *oust* an elected representative of the people on the bald ground that she voices unsympathetic political views — that is, that she engages in an activity that is at the core of what is protected by the First Amendment.  Such an action by a state official, if allowed, would offend the basic purposes of the Free Speech Clause — the facilitation of full and frank discussion in the shaping of policy and the unobstructed transmission of the people's views to those charged with decision making."

---

[4] The opposing board members wrote a letter to the Chancellor alleging that, after a recent community school board meeting, Velez had sprinkled a suspicious, pink, powder-like substance in front of the office door of the Acting Superintendent and had dropped a bag containing additional powder.  The letter requested that the Chancellor remove Velez from the school board. *Velez*, at 82.

*Id.* at 97-98 (emphasis added).   The Court also differentiated Velez's circumstances from those in *Camacho* where the official remained in his position as a city council member.

> "The official in *Camacho* remained free to express his political views in the council chamber, to cast votes, and to serve his constituents in his capacity as a member of the council even after his assistant was terminated.  By contrast, [*Velez*] involves the outright removal of the board member, and her attendant preclusion from participating in board debates, voting or serving her constituents."

*Velez*, at 97.

The instant case is not *Velez*.  Nelson argues that, as she was elected based on her criticisms of the handling of IEPs and her promise to review them differently, the Board's actions that interfere with her agenda have denied representation to her constituents.[5]   While Nelson attempts to equate the defendants' alleged actions to a "stripping" of her elected office or her "ouster," the facts as she has alleged them do not support such an assertion.

Nelson simply does not allege how she has been prevented from representing the interests of her constituents.  Nelson does not allege that she has been prevented from speaking at Board meetings or expressing the views she espouses.  She does not allege that she has been prevented from voting on any measure before the Board.  Like the official in *Camacho*, Nelson remains free to

---

[5] Nelson alleges that the passage and enforcement of the Resolution "severely obstructed, and continue to obstruct" her from performing her duties as a Board member such that "the residents of the Jamestown City School District who re-elected her in May 2004 are effectively denied representation on the [Board] ***."  Compl. ¶35.

express her views on this or any other matter before the Board, to vote on the approval or disapproval of IEPs or any other matter before the Board, and to otherwise faithfully serve and advocate for her constituents.  That the other Board members have chosen to disagree with the position advocated by Nelson and have chosen to implement the Resolution which she opposes does not mean that she has been rendered incapable of representing her constituents.   Her allegations amount only to a claim that she has been prevented from *carrying out* the wishes of those who elected her.  Such does not constitute First Amendment retaliation under *Velez*.[6]   Accordingly, Nelson's claim for violation of her First Amendment rights will be dismissed.

B.  Declaratory Judgment Claim

For her first cause of action, plaintiff seeks a declaration that she should be allowed to read each IEP because

> "a serious dispute exists between herself and defendants concerning the right and responsibility of a School Board Member to read and review an IEP in order to comply, specifically, with defendant Board of Education's duty to review and approve the IEP recommendation of the [Committees], as set forth at 8 NYCRR 200.2(d)(1) and 200.4(e)(2), and generally, to otherwise faithfully discharge the duties of School Board Member."

---

[6] In fact, Nelson's purported First Amendment claim runs contrary to the rationale of *Velez*. If an elected official could assert a First Amendment retaliation claim for every enactment or intra-Board vote that ran contrary to his or her own political agenda, the already glacial pace of governmental activity would grind to a complete halt.  Moreover, the constant threat of such litigation could hardly be said to facilitate "full and frank discussion in the shaping of policy and the unobstructed transmission of the people's views to those charged with decision making." *Velez*, at 97-98.

Compl. ¶28.  It is clear that what Nelson seeks is a declaration that, under the laws,  administrative codes and regulations promulgated by the State of New York, she, as a Board member, has a duty to read each such IEP.  As such a declaration is obviously within the purview of the New York State courts and as such courts are better equipped to issue a declaration as to the requirements of New York law, the Court declines to exercise supplemental jurisdiction over the remainder of Nelson's claim.[7]

It is accordingly **ORDERED** that Nelson's claim pursuant to 42 U.S.C. §1983 for violation of her First Amendment rights is dismissed, the Court declines to exercise supplemental jurisdiction over the remaining claim and this case is dismissed without prejudice to Nelson's seeking declaratory relief in New York State court.

The Clerk of the Court is directed to take all steps necessary to close the case.

DATED:       Buffalo, N.Y.

January 27, 2006

_____
                        /s/ John T. Elfvin
                        JOHN T. ELFVIN
                        S.U.S.D.J.

---

[7] Accordingly, the Court need not and does not reach the issue of whether the declaratory relief sought by Nelson could have or should have been brought as an Article 78 proceeding.